## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **REBECCA H. MITCHELL** | ) | |
| **f/k/a Rebecca H. Coley,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action File No. _____** |
| **v.** | ) | |
| | ) | |
| **WELLSTAR HEALTH SYSTEM, INC.** | ) | |
| **d/b/a WELLSTAR COBB HOSPITAL** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff, REBECCA H. MITCHELL f/k/a Rebecca H. Coley ("Mitchell") files this her Complaint for relief against WellStar Health System, Inc. d/b/a WellStar Cobb ("Defendant" or "WellStar"), and respectfully shows the Court as follows:

## PRELIMINARY STATEMENT

1.

This civil rights action seeks injunctive and equitable relief, back pay, money damages, compensatory, liquidated and punitive damages, costs and attorney's fees to remedy these civil rights violations. These wrongful acts include,

but are not limited to, a practice of disparate treatment based on gender, discrimination based on gender in conditions of employment, removal of job duties, extra scrutiny, interference with her statutory legal rights to engage in protected activity, and other adverse employment actions including termination, under Title VII of the Civil Rights Act of 1964 and other laws; for retaliation in the form of harassment, infliction of adverse terms and conditions of employment, emotional pain and suffering, termination, and other similar acts under Title VII of the Civil Rights Act of 1964 and other laws; and state law claims.

## JURISDICTION AND VENUE

### 2.

This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., as amended, the Civil Rights Act of 1991, 42 U.S.C. § 1981a (collectively "Title VII"); and supplemental state law claims.

### 3.

The Court has jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331, 1343 (a)(4).

### 4.

Jurisdiction over the Title VII federal claims is appropriate because on March 31, 2020, within 180 days of the last act of discrimination, Mitchell filed

EEOC Charge No. 410-2020-04835 regarding discrimination in violation of Title VII.   On January 29, 2021, the EEOC issued a Notice of Right to Sue.  Mitchell timely filed this action within 90 days of receipt of that Notice.  All causes of action that arose out of the Charge are properly included in this Complaint.  All statutory prerequisites have been satisfied prior to bringing this suit.

5.

This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

6.

Liquidated damages are sought pursuant to 29 U.S.C. §§ 626(b), and 2617(a).   Compensatory and punitive damages are sought pursuant to 42 U.S.C. § 1981a, 29 U.S.C. § 2617(a), and state law.  Attorneys' fees and expenses of litigation are sought pursuant to 42 U.S.C. §§ 1988, 2000e-5(k), 29 U.S.C. §§ 216(b, 260, 2617(a), Fed. R. Civ. P. 54, and state law.  Equitable relief is sought under 29 U.S.C. § 2617(b), and state law.

7.

Venue properly lies in this Court pursuant to 28 U.S.C. § 1391(b), Local Rule 3.1 N.D. Ga, because the unlawful employment acts and the violations of Plaintiff's rights were committed in this district.

## PARTIES

### 8.

Plaintiff Rebecca H. Mitchell, female, is a citizen and resident of the United States, was a resident of Cobb County, Georgia at all times relevant hereto, and is now a resident of Mecklenburg County, North Carolina.

### 9.

Defendant WellStar is a corporation engaged in interstate commerce and authorized to do business in the State of Georgia, with its principal place of business in Georgia at 793 Sawyer Road, Marietta, Georgia 30062.  WellStar is subject to the jurisdiction and venue of this Court and may be served by serving its registered agent:  Leo E. Reichert, 793 Sawyer Road, Marietta, Georgia 30062.

## STATEMENT OF FACTS

### 10.

WellStar employs more than 500 employees and at all times relevant hereto was and is an employer within the meaning of Title VII.

### 11.

Plaintiff was an "employee" as defined by Title VII and is female.

12.

Mitchell began her employment at WellStar Cobb Hospital (the "Hospital") in 2013 when she was hired a manager to start the inpatient burn center. The burn services partnership which referred her to the Defendant was the largest in the United States.  On May 20th, 2013 she opened and managed   the inpatient burn center at the Hospital.

13.

In January 2014, she was transitioned to an exempt status as Manager of Inpatient Burn.   During her tenure she developed Burn Services.  Mitchell was given increased administrative responsibility.   She took over 2 departments, Outpatient Burn in December 2014 and Outpatient Wound and Hyperbaric in August, 2017, and incorporated them into the Burn Services. In October 2017, Mitchell opened the new Inpatient Pediatric Burn Center.  She developed Burn Services to include Inpatient Burn Unit/ Burn ICU, Pediatric Burns, Outpatient Burn Wound and Hyperbaric Center eventually supervising approximately 80 employees or full- time equivalents. Mitchell developed Burn Services into a nationally recognized Burn Center.   Upon information and belief, this experience made Mitchell the only employee at the Hospital who has successfully developed such a service.

14.

From 2013 until February 2019, Mitchell had excellent professional relationships with her supervisors, officers, the Board, managers, peers, and staff. During that time Mitchell was recognized for tremendous growth and success at a WellStar Health System level and was promoted in July 2017 to Director of Burn Services with 6 departments directly reporting to her by October of 2017 (Inpatient Burn ICU/Pediatric Burn, Inpatient Wound, Outpatient Burn, Outpatient Wound, and finally opened Hyperbaric in early 2018.

15.

In all of Mitchell's reviews, the Hospital rated Mitchell as Exceeded Expectations or Outstanding. She had no write-ups or reprimands or HR issues. She also received satisfactory or excellent reviews, pay raises, and bonuses.

16.

During her employment at the Hospital, Mitchell received awards, recommendation as a leader and recognitions for her work including, but not limited to, the following:

May 2015—Elite Leadership Cohort Graduate from Seattle Pacific based on recommendation from Defendant Executive or enrollment;

May, 2015--Received WellStar Lean Six Sigma Yellow belt certification;

2016, 2017, 2018, & 2019--Nominated by Defendant for Atlanta Journal Constitution Nurse of the Year;

May 2016 --Defendant submitted her picture to Marietta Daily Journal for recognition for National Nurses Week;

June 2016---Burn Services under Mitchell's leadership recognized on FOX local and national news as Center of Excellence;

October 2017--Recognized as leader of excellence/compassion story in WellStar Marketing video distributed throughout Defendant's system, and on continuous replay video at the WellStar Corporate office for 6 months or more.

April 2018 & 2019--Invitation and recognition by Defendant for Special Guest recognition at Cobb County Chamber of Commerce Gala;

October 2018--Invitation and recognition by Defendant for Special Guest recognition at WellStar 50th Anniversary Gala honoring legacy and future growth;

May, 2018--Featured/recognized story in the WellStar Newsletter May 2018 for outstanding leadership in Burn care/patient story;

January 2019--Recipient of the Deliverance Dustoff Ranger Battalion to the WellStar Burn Unit for support and air ambulance training;

September 2019—WellStar "Employee of the Month", receiving 7 Winners of WellStar recognitions from peers in Burn Unit, awarded while out on forced administrative leave of absence.

17.

On February 20, 2019, Mitchell reported hostile treatment and discriminatory comments by a male doctor to a female nurse and female staff to Rhonda Howell, Chief Nursing Officer and Regina Childers, HR. Mitchell's report was to Howell and Childers and was required and consistent with corporate policy.

18.

Corporate policy required that the February 2019 report be investigated. Andrews and Howell told Mitchell and Burn staff the matter would be investigated. No follow up with Mitchell ever occurred and, upon information and belief, no investigation or follow up occurred with the staff and no action was taken as to the doctor.

19.

After this February 2019 report of discriminatory behavior by the male doctor, Mitchell began suffering retaliation, including but not limited to, by difficulties in and lack of communication from her superiors, often with no response to requests, extra scrutiny, being asked to submit background and invoices multiple times for department capital expense requests and additional staffing needs, no communication or follow up on approval and subsequently those expenses/staffing requests for the department were denied with no explanation.

20.

In March 2019, less than one month after Mitchell's initial report of discrimination by the male doctor, Mitchell suffered adverse employment action when Howell announced in a public meeting that the Defendant was making changes to Burn Services and this would affect Mitchell reporting to a new Executive Director, moving her down one level in hierarchy, and taking 80% of her service line away. This information did not come from her supervisor in the organizational hierarchy but was first announced in a meeting with the nursing executive team (NET) and one of the other nurse leaders (Pinyan) announced the posting of a Burn Exec Director position.

21.

Defendant never followed through on its threat to change her reporting and move her down one level in the hierarchy.

22.

In April, 2019, Mitchell was asked about moving a male Outpatient Burn Wound and HyperBaricOxygen therapy Manager, JC, into a vacant position as Manager of the Inpatient Burn Unit, which position reported to Mitchell. Mitchell stated he was not qualified, did not have the experience, and he had stated he was not interested in the inpatient manager position.

23.

In April, 2019, after Mitchell objected to the male JC being placed in the Inpatient Manager position, Mitchell began to experience further retaliation, disparate treatment, and extra scrutiny. She reported these claims to Howell, including but not limited to, was being attacked, dismissed, misunderstood, unappreciated, and being "managed out." Upon information and belief, no investigation was conducted. No action was taken on Mitchell's reports of disparate treatment. The discriminatory and retaliatory treatment continued and worsened.

24.

On July 2, 2019, Howell called Mitchell while on vacation and said that she wanted to offer JC the role of permanent Manager for Inpatient Burn Unit reporting to Mitchell.  Mitchell again expressed that he was not qualified.

25.

On July 8, 2019, Howell placed the male JC into the permanent Manager Inpatient Burn Unit, reporting to Mitchell, and Mitchell would still report to Howell.  When Howell told Mitchell about the promotion for JC, Mitchell again expressed he was not qualified.  In retaliation for Mitchell's complaints about the male and discrimination, Howell then threatened Mitchell with loss of job and told Mitchell repeatedly during the conversation, "I understand if you want to resign."

26.

Only two days later, on July 10, 2019, Mitchell suffered an adverse employment action in the Hospital stripping Mitchell of the responsibility to manage the Inpatient Burn Unit, which would be reporting to a new Executive Director position.  Mitchell was told she would only manage Outpatient Burn Unit, Wound, and Hyperbaric.   The Defendant removed all department, operational, and clinical day to day responsibilities for the Inpatient Burn Unit, Inpatient Pediatrics, Inpatient

Wound from Mitchell and her only inpatient responsibility since then was admission calls, and burn-related questions.

27.

When Mitchell told Howell this change was not appropriate and embarrassing, Howell told her: "If you want to resign, we understand.  Understand if you cannot do this."  Howell also told her they would assign a professional coach to help Mitchell embrace/ understand the new role, Mitchell told her this was humiliating, but she would accept the professional coach.

28.

Defendant never followed through on its threat to assign her a professional coach.

29.

On July 17, 2019, without Mitchell being present or invited to the meeting, Lisa Teal, then Interim Executive Director ICU, CCU, and Burn Services, and JC made the announcement that evening to staff that he was Inpatient Burn Manager and not reporting to Mitchell.

12

30.

From that point on, staff began calling/visiting Mitchell every day to question changes, complain generally and to make specific complaints about JC.  These included complaints about safety concerns and lack of resolution regarding safety concerns, staff's inability to reach him, his lack of presence or engagement in the department, and the violation of falsifying documentation of daily rounding on patients/families in the department.  Mitchell reported these matters to Howell weekly and her HR contact Regina Childers on a bi-weekly basis.

31.

Subsequent to her reports of her staff's complaints about the male manager, Mitchell was subjected to additional scrutiny, negative remarks, and being treated as not supportive and a troublemaker, instead of someone who was reporting actual issues that staff was raising that affected patients and the Hospital.

32.

Defendant's actions show its intent to lie in wait and seize the first ostensibly-legitimate opportunity to terminate her.

33.

On September 4, 2019, Mitchell reported Regina Childers in Human Resources that certain female colleagues had reported that JC made gender discriminatory and sexist remarks to them.  Mitchell also reported to Childers that staff had reported performance issues with the male manager, that Mitchell had to complete some tasks JC did not do or he failed to respond to female staff's calls for assistance, and that certain reports were inaccurate or false. Childers told Mitchell she thought the remark was discriminatory and to send the staff to her in HR with their concerns.

34.

One day later, on September 5, 2019, Howell asked Mitchell to meet. Mitchell met with Howell to discuss her report to HR of Carroll's discriminatory remarks and the issue of Carroll's records.  Howell quickly became irritated and defensive, and stated that she would handle it. Howell specifically directed Mitchell that she did not need to meet with Childers in HR regarding these things, directly interfering with Mitchell's statutory legal rights to engage in protected activity under Title VII and otherwise.

35.

On September 12, 2019, Mitchell reported to Howell by telephone that evening at approximately 6:30 p.m. that the female Outpatient Burn Coordinator, had contacted Mitchell because she could not get JC to respond to a female nurse and was not rounding. Howell became angry and stated she was setting a meeting with Mitchell, Teal, and JC to resolve issues.

36.

The very next day after Mitchell reported complaints of JC's treatment of female staff, on September 13, 2019, Mitchell showed up for the meeting scheduled the evening before, but   JC was not present as Howell said she had instructed him to attend.  The Defendant, through Howell and Teal, blamed Mitchell for deficiencies in the Inpatient Burn Unit under the male's management during a mock inspection the day before, when Mitchell had no responsibility for the Inpatient Burn Unit.   Mitchell pointed out this disparate, discriminatory, and retaliatory treatment as the Defendant had removed all such responsibility from her and her units had all passed with no deficiencies.   Howell raised her voice, jumped up from her desk, and reacted angrily to Mitchell.  Howell told Mitchell that she reported to Howell, and that JC did not report to Mitchell.

37.

In this September 13, 2019 meeting, Howell and Teal discussed the issues of discrimination and disparate treatment of female staff by the male manager that Mitchell had raised.  The Defendant again violated Mitchell's statutory legal rights to engage in protected activity under Title VII, and Howell instructed Mitchell not to tell the staff to go to HR, but to tell them to go to Howell or Teal.  Mitchell again asked if she was being instructed not to tell the staff to go to HR, and Howell again instructed her to tell them to go to Howell if they did not want to go to Teal. Howell then instructed Teal to leave the meeting and Teal left.

38.

In that same meeting, Howell instructed Mitchell to go home until HR calls her.  She did not mention a leave of absence.  Mitchell understood she was simply going home early that day, was stunned, but cooperative, and left.

39.

Mitchell behaved in a calm professional manner in this September 132019 meeting, but Howell did not.  After the meeting, Mitchell left the Hospital as directed, and spoke to no one.  However, staff sitting outside the door, within hearing, did not hear any raised voices.

40.

Shortly after Mitchell left, Defendant changed locks on Mitchell's office, disabled her email without notice to her, and upon information and belief, upon information and belief, the Defendant inventoried the documents in Mitchells' office, and Teal and Howell falsely told staff she is on a leave of absence.

41.

On October 3, 2019, in a meeting with Howell and Danyale Ziglor, Howell told Mitchell they had decided to terminate her, but did not provide a reason. Defendant did not provide Mitchell with a Georgia DOL-800 Notice of Separation.

42.

Subsequent to Mitchell's termination, the Hospital claimed that it terminated Mitchell's employment for insubordination and unprofessional behavior.

43.

Also subsequent to Mitchell' termination, the Hospital terminated JC's employment, upon information and belief, for failure to satisfactorily perform the requirements of his position.

44.

At all times relevant hereto, WellStar was aware of the discrimination against, extra scrutiny of, and disparate treatment of Mitchell as a female, the retaliation against Mitchell, and the interference with Mitchell's statutory legal rights to engage in protected activity under Title VII.

45.

Defendant through its agents stated at a meeting with the staff that Mitchell was being terminated for reasons Mitchell was aware of and had been told.

46.

Defendant and its agents allowed employees to disseminate false and misleading communication about Mitchell, including but not limited to, that Mitchell was terminated for and was made aware of the reasons for her termination, implying cause.

47.

Defendant and its agents told all staff that inquired that Mitchell had been terminated for reasons they could not disclose per HR policy, but that Mitchell was aware of the reasons.  That was untrue as Defendant did not provide a reason to Mitchell for termination.  Defendant's statements announcing Mitchell's termination

and implying the reasons were such they could not be disclosed, leaving negative implications, were contrary to Defendant's personnel policies.

48.

Defendant and its agents made or allowed these statements knowing burn units were a "small community", and it would be upsetting to her, harm her, and cause her emotional distress.

49.

At all times material to this litigation, WellStar had reasons to know, or through the exercise of due diligence and care should have known, of the discriminatory and retaliatory acts of its agents and employees. Despite this knowledge, WellStar failed and even refused to intervene.

50.

The unlawful, discriminatory, and retaliatory actions by Defendant and its agents and employees were done during and within the scope of their agency and employment.

## COUNT I

## DISCRIMINATION IN VIOLATION OF TITLE VII

51.

Mitchell hereby re-alleges all preceding paragraphs of this Complaint as if each and every paragraph had been fully and completely re-stated herein.

52.

WellStar's disparate treatment of Mitchell, because of her sex, in terms and conditions of employment, conduct, and termination, violates the statutory provisions and protections of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.

53.

WellStar's acts and conduct constitute willful and intentional discrimination.  WellStar engages in its discriminatory practices with malice or with reckless indifference to the protection of Mitchell.

54.

As a result of Defendant's unlawful acts, Mitchell has suffered damages, including but not limited to, back pay, front pay, loss of benefits,

compensatory damages, and is entitled to the relief as set forth in the Prayer for Relief below.

## COUNT II

## RETALIATION IN VIOLATION OF TITLE VII

### 55.

Mitchell hereby re-alleges all preceding paragraphs of this Complaint as if each and every paragraph had been fully and completely re-stated herein.

### 56.

Defendant WellStar acted in reprisal and retaliation against Mitchell for challenging its unlawful actions in violation of Title VII, 42 U.S.C. § 2000e-3(a), as amended.

### 57.

Mitchell was engaged in a protected activity by reporting and challenging the unlawful practices of WellStar, including but not limited to, a male doctor's and male manager's discriminatory statements about and to females, a male not responding to female's requests for assistance, male's failure to adhere to corporate policies.

58.

WellStar failed to adequately investigate the validity of or remedy the Mitchell's complaints about discriminatory treatment of females by males nor her charges that her extra scrutiny, disparate treatment, and adverse employment actions were based on her gender and her exercise of her legal rights under Title VII.

59.

Defendant never followed through on its threat to change her reporting so that it would demote her in the hierarchy or assign her a professional coach, which is evidence of the Defendant lying in wait to find a pretextual reason for termination.

60.

Defendant's allegations of Mitchell's insubordination and unprofessional behavior are pretextual, an excuse to terminate her, and in retaliation for her reports of actions violating Title VII, questioning and complaints concerning standards, terms and conditions of employment, and benefits on behalf of female employees.

61.

Thereafter, WellStar through its officer, agents, and employees retaliated against Mitchell for her protected legal actions in violation of Title VII, 42 U.S.C. § 2000e-3(a), as amended, including but not limited to, extra scrutiny,

harassment, removal of job duties, termination, and other adverse employment actions.

62.

Defendant's willful unlawful acts of retaliation have demonstrated its malice and reckless indifference to the right of Plaintiff to work in an environment free from retaliation for challenging unlawful actions, thereby entitled Plaintiff to punitive damages.

63.

As a result of Defendant's unlawful acts, Mitchell has suffered damages, including but not limited to, back pay, front pay, loss of benefits, compensatory damages, and is entitled to the relief as set forth in the Prayer for Relief below.

## COUNT III

## INTERFERNCE WITH LEGAL RIGHTS TO REPORT DISCIMINATION AND RETALIATION UNDER TITLE VII

64.

Mitchell hereby re-alleges all preceding paragraphs of this Complaint as if each and every paragraph had been fully and completely re-stated herein.

23

65.

WellStar willfully and unlawfully interfered with Mitchell's exercise or attempted exercise of her statutory legal rights to engage in protected activity, and other adverse employment actions including termination, under Title VII of the Civil Rights Act of 1964 and other laws.

66.

Mitchell was prejudiced and suffered damages by WellStar's willful and unlawful interference of her rights under Title VII and is entitled to the relief as set forth in the Prayers for Relief below.

## **COUNT IV**

## **NEGLIGENT RETENTION**

67.

Mitchell hereby re-alleges all preceding paragraphs of this Complaint as if each and every paragraph had been fully and completely re-stated herein.

68.

WellStar knew, or, in the exercise of ordinary care, should have known, that is employees were engaging in, and had previously engaged in, unlawful conduct against Mitchell.

69.

Despite WellStar's actual or constructive knowledge of the propensities of those employees to engage in such unlawful conduct, WellStar negligently retained those employees.

70.

As a direct and proximate result of WellStar's negligent retention of those employees, Plaintiff was unlawfully treated in the workplace, was damaged, and is entitled to the relief set forth in the Prayer for Relief.

71.

WellStar acted intentionally, willfully, with malice and in reckless or conscious disregard of Plaintiff's rights and the consequences of its actions, and Plaintiff is entitled to recover punitive damages for such actions under Georgia law.

## COUNT V

## EXPENSES OF LITIGATION
## AND ATTORNEY'S FEES

72.

Mitchell hereby re-alleges all preceding paragraphs of this Complaint as if each and every paragraph had been fully and completely re-stated herein.

73.

Defendant is entitled to recover her attorneys' fees and expenses of litigation pursuant to Title VII.

74.

At all times relevant hereto, Defendant has acted in bad faith, has been stubbornly litigious and have caused Plaintiff unnecessary trouble and expense. Plaintiff is entitled to recover her expenses of litigation, including reasonable attorneys' fees from Defendant for her state law claim under OCGA 13-6-11, and all other statutory provisions of Georgia law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Mitchell respectfully invokes the powers of this Court and prays for the following:

a)    That the Court grant trial by jury;

b)    That Mitchell have and recover from Defendant WellStar all amounts available under Title VII including but not limited to back pay, front pay, compensatory damages, liquidated damages, damages for mental anguish, benefits, and punitive damages in

an amount sufficient to deter such discriminatory and retaliatory conduct in the future;

c)     That Mitchell have judgment on her state law claim against Defendant in an amount to be determined by the enlightened conscience of an impartial jury.

d)     That Plaintiff have judgment for punitive damages on her state law claim against each Defendant in an amount sufficient to deter such wrongful and unlawful conduct in the future.

e)     That Plaintiff be awarded her expenses of litigation, including her reasonable attorneys' fees under both her federal and state law claims against Defendant; and

f)     That the Court grant such other and further relief as it deems just and proper.

**RESPECTFULLY SUBMITTED**, this 22nd day of March 2021.

/s/ Mary A. Prebula
Mary A. Prebula
Georgia Bar No. 586743
Canon T. Corbitt
Georgia Bar No. 963443
PREBULA & Associates, LLC
ATTORNEYS AT LAW

27

3400 Peachtree Road NE
Suite 1250 Lenox Towers North
Atlanta, GA 30326
(770) 495-9090
(770) 497-2363 (fax)
mprebula@prebualallc.com
ccorbitt@prebulallc.com

M:\Mitchell - Coley\Pleadings\2021 0322 Mitchell Complaint Final.docx